IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ANTHONY STILLS,

    Petitioner,

v.                                                             Civ. No. 05-804 JH/RLP

ROBERT ULIBARRI, Warden, *et al.*,

    Respondents.

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION[1]

1.     This is a proceeding brought pursuant to 28 U.S.C. § 2254. Anthony Stills ("Stills") is currently serving a life plus 20 year sentence for, *inter alia*, the murder of his 14 year old step daughter, Hollie Kerr.[2] *See* Answer [Doc. 9], Exhibit W thereto. Stills was convicted by a jury appealed that conviction, which the New Mexico Supreme Court (NMSC) affirmed in an unpublished opinion. *See* Exhibit H. Stills next filed a federal habeas petition, which was denied by the district court and affirmed by the Tenth Circuit Court of Appeals. *See* Exhibits J-0.

2.     On June 24, 2002, Stills filed a petition in state court for new DNA testing pursuant to NMSA (1978) § 31-1A-1.[3] The state court granted the request, held a hearing

---

[1] Within ten (10) days after a party is served with a copy of the Magistrate Judge's Report and Recommendation that party may, pursuant to 28 U.S.C. § 636 (b)(1), file written objections in the United States District Court to the Report and Recommendation. A party must file any objections within the ten-day period allowed if that party wants to have appellate review of the Report and Recommendation. If no objections are filed, no appellate review will be allowed.

[2] In the various pleadings the victim's name is spelled both as "Hollie" and "Holly." For consistency, this opinion will use Hollie.

[3] That provision was repealed and the current statute is NMSA (1978) § 31-1A-2.

and heard evidence, and issued a letter and an order denying relief. *See* Exhibits Z & AA. Stills filed a petition for writ of certiorari, Exhibit BB, which was denied on April 26, 2005, Exhibit CC.

3. Stills filed the current federal habeas petition, which was treated as a second or successive petition and sent to the Tenth Circuit. That Court issued an Order stating that this Court was to determine whether Stills had exhausted his claims and whether he met the newly discovered evidence requirements of § 2244(b)(2)(B).

4. Concerning exhaustion, Respondents argue that the claims are exhausted, *see* Answer, ¶ 9, but then argue that the claims are not exhausted, *id.*, ¶ 11. In any event, the provisions set forth in § 2254(b)(1)-(2) allow the court to dismiss the petition on the merits whether or not the claims are exhausted.

5. Section 2244 provides in pertinent part that a second habeas petition containing a claim that was not presented in the prior application shall be dismissed unless

> (B)(i) the factual predicate for the claim could not have been discovered previously through the exercise of due diligence; **and** (ii) the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

§ 2244(b)(2)(B)(i)-(ii) (emphasis added).

6. Respondents argue that the issues herein were fully briefed to the Tenth Circuit in Stills' first petition. *See* Answer, ¶ 5. The Court disagrees with that assertion, but finds that because Stills cannot prevail under § 2244(b)(2)(B)(ii) the Court need not address § 2244(b)(2)(B)(i). For the same reason, the Court does not address the exhaustion issue pursuant to § 2254(b)(2).

7.     A brief discussion of the facts is necessary to understand the current claims raised by Stills.  The following narrative comes from the NMSC's unpublished opinion in *State v. Stills*, Exhibit H.  On April 19, 1993 Hollie Kerr, Stills' step-daughter, was driven home from school by her friend Kevin at 2:55 p.m. or 3:00 p.m.  Kevin saw Stills' car in the parking lot of the apartment building where Kerr lived with her mother and Stills.  At 3:10 to 3:15 p.m., Hollie received a call from her friend Chris.  Chris testified that Hollie was sobbing and very upset.  He called her again 10 minutes later and the call was picked up by the answering machine.  Exhibit H at 2.

8.     At approximately 3:30 p.m., Hollie's mother came home from work to pick up some headache medicine.  Stills' car was not in the parking lot.  She noticed blood on the bathroom light switch and the door.  She saw no sign of Hollie.  She returned to work five minutes later.  *Id*.

9.     At approximately 3:50 p.m., Stills called Hollie's mother at work and told her he thought Hollie was dead.  She told a co-worker to call 911 and she arrived back at the apartment at approximately 4:00 p.m. Stills' car was in the parking lot and, from testimony at trial, was in a different spot than when it was observed by Kevin at 3:00 p.m.  *Id*.

10.    Paramedics arrived at approximately 4:00 p.m. and found Stills attempting to give mouth-to mouth resuscitation to Hollie, who was dead.  "Hollie was found with her clothing in disarray; her shirt around her neck exposing her chest, her shorts around her ankles, and her underpants pulled up and wedged between her legs."  *Id*. at 1.

11.    The police found bloody gloves at a nearby intersection the day after the murder.  Missing fingertips from the gloves matched a bloody piece of vinyl glove found under the dust ruffle of Hollie's bed.  *Id*.  at 3.  "A portion of a vinyl glove, found at the

intersection . . . was subjected to DNA typing analysis, using the RFLP technique. It was determined that the blood on the glove was consistent with Hollie's blood. The testimony at trial was that the probability that a randomly-chosen individual would have the same DNA profile as the blood found on the glove samples analyzed by the RFLP technique is 1 in greater than 5.5 billion." *Id.*

12. "Blood on the gloves was further analyzed using PCR amplification. This technique makes copies of a small region of DNA permitting DNA analysis of very small samples when larger samples cannot be obtained. The analysis determined that samples of blood found on the glove were consistent with Hollie's blood and with [Stills'] blood. A box of the same type of gloves was found under the kitchen sink in the apartment[;] one pair was missing." *Id.*

13. Hollie was severely beaten about the face, neck, and head. She was strangled with a bathrobe sash. Stills' knuckles on his right hand were swollen and there was a fresh cut on his knuckles. There were scratches on his neck and face. *Id.* at 4-5. While the paramedics were there, but before the police arrived, Stills washed away bloodstains around the light switch and the door to the master bedroom. "The light switch, sink and counter in the master bathroom were sprayed with the chemical Luminal and tested positive for the presence of blood. Further Luminal tests confirmed the presence of blood on the floor of the apartment's other bathroom, which connected to Hollie's bedroom. None of the blood spots were visible to the naked eye, indicating that someone had attempted to clean them up." *Id.*

14. An issue not examined by the NMSC, but highly relevant to the instant proceeding, concerns a carpet sample taken from underneath and close to Hollie's body.[4] Two semen stains were found on this sample. PCR testing available at the time was inconclusive. Defendant-Appellant's Brief in Chief, Exhibit D, at 52.

15. The issues set forth by Stills in the current petition are these. DNA testing procedures currently available were not available during 1993 and 1994, the time of the murder and trial. At that time, the testing on the carpet sample was inconclusive and he states that the prosecutor told the jury that the semen sample on the carpet and the semen sample taken from Stills' underwear were identical. Also at the time of trial, the prosecution argued that the DNA on the glove was that of both Hollie and Stills.

16. In fact, the new DNA test results found that the semen on the carpet was not that of Stills and that the DNA on the glove was that of Hollie and "a male." Stills argues this is newly discovered evidence and meets the criteria set forth in § 2244(b)(2)(B)(ii). That is, the fact that the semen on the carpet sample is not his points to another perpetrator and, because the blood on the glove's fingertips is only identified as male, and not as Stills' blood, further implicates another individual. He argues that no jury would have found him guilty, viewing this evidence in light of the evidence as whole.

17. In *Herrera v. Collins*, 506 U.S. 390 (1993), the United States Supreme Court stated:

---

[4] The issue on appeal was the prosecution's failure to prevent degradation of the sample by waiting 15 months to send the carpet off for sampling and for improper storage of the sample during three of the 15 months. Petitioner argued that proper handling of the carpet sample might have exonerated him because, rather than being inconclusive, would have identified another perpetrator. Exhibit D at 53-55.

5

> Claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding. . . . This rule is grounded in the principle that federal habeas courts sit to ensure that individuals are not imprisoned in violation of the Constitution--not to correct errors of fact.

*Id*. at 400.

18. In his § 2254 petition, Stills does not identify any independent federal constitutional violation. He argues that the prosecution treated as established fact that his DNA was on the carpet sample and the bloody fingertips of the glove. These assertions do not rise to the level of a denial of a fair trial based on prosecutorial misconduct. For habeas relief to be warranted on the basis of prosecutorial misconduct, it is not enough that the prosecutor's conduct was "undesirable or even universally condemned." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986). Rather, the misconduct must have "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Id*. (internal quotation marks omitted). Furthermore, "the touchstone of due process analysis . . . is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips*, 455 U.S. 209, 219 (1982).

19. Even without the prosecutor's assertions, the evidence of Stills' guilt is overwhelming. It defies logic and reason that an unknown intruder could have entered the home and murdered Hollie given the short time line involved, as set forth in ¶¶ 9-12, *supra*. There were simply too many people calling and coming into and out of the home in the 50 minutes between Hollie's arrival at home and Stills' phone call to advise the mother that Hollie was dead to warrant even an inference, must less a reasonable probability, that an unknown intruder committed the murder.

20. The state trial judge who held the evidentiary hearing on Stills' state habeas petition denied the petition, indicating that the evidence at trial "strongly points to the guilt of Mr. Stills." Exhibit Z. The judge went on to say:

> The new DNA evidence upon which the Petitioner relies must create a reasonable probability that the jury would reach a different verdict. In this case, most of the evidence establishes that the semen stain on the carpet was placed there some time prior to the crimes charged in this indictment. Therefore, the stain in question, in all probability, is unrelated to the events of April 19, 1993.

*Id.*

21. The DNA on the carpet sample under Hollies' body did not belong to Stills. The testing, however, was unable to determine when the semen was deposited on the carpet. Exhibit Y at 45. More important, however, is the fact that no semen was found in or on Hollie's body at the autopsy. *Id.* at 46. I agree with the trial judge that the stain is more likely than not unrelated to the events in question.

22. Because Stills alleges no independent constitutional violation as required by § 2244(b)(2)(B)(ii) and because no independent constitutional violation can be found by this Court, I recommend that the petition for writ of habeas corpus be denied.

### RECOMMENDED DISPOSITION

I recommend that the petition for writ of habeas corpus be denied and this case dismissed with prejudice.

---

Richard L. Puglisi
United States Magistrate Judge